# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JOSHUA DAWSON, an individual,** ) | |
| ) | |
| Plaintiff, ) | Case No. 21-CV-359-RAW |
| ) | |
| v. ) | Hon. Judge |
| ) | |
| **DEAN JACKSON, individually** ) | |
| ) | |
| **CINDY AKARD, individually,** ) | |
| ) | |
| **ARTIE COLE, individually,** ) | |
| ) | |
| **SHERMAN HAMILTON, individually,** ) | |
| ) | |
| **JULIE FODGE, individually,** ) | |
| ) | |
| **ASHLEY HAWKINS, individually,** ) | |
| ) | |
| and, ) | |
| ) | |
| **ANTHONY ECHELLIE, individually** ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

COMES NOW the Plaintiff, Joshua Dawson, through his attorneys of record, and for his Complaint against the above-titled Defendants states and alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff Joshua Dawson is a resident of Oklahoma and resides in Bryan County, Oklahoma

2. Defendant Dean Jackson is a citizen and resident of Atoka County, Oklahoma. Defendant Jackson was at all relevant times the Oklahoma Department of Transportation Superintendent (ODOT) and in his position has been, at all times relevant hereto, responsible for ensuring non-discriminatory work policies with respect to his employees at ODOT pursuant to federal and state

law. In addition, Defendant Jackson is, and was at all relevant times hereto, responsible for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs of ODOT, including the policies, practices, procedures, and/or customs that violated Plaintiff's rights set forth in the Complaint.

3. Upon information and belief, Defendant Cindy Akard is a citizen and resident of Atoka County, Oklahoma. Defendant Akard was at all relevant times the Human Resources Manger for ODOT and in her position has been, at all times relevant hereto, responsible for ensuring non-discriminatory work policies with respect to his employees at ODOT pursuant to federal and state law. In addition, Defendant Akard is, and was at all relevant times hereto, responsible for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs of ODOT, including the policies, practices, procedures, and/or customs that violated Plaintiff's rights set forth in the Complaint.

4. Upon information and belief, Defendant Artie Cole is a citizen and resident of Atoka County, Oklahoma. Defendant Cole was at all relevant times Plaintiff's coworker and trainer when Plaintiff began working for ODOT.

5. Upon information and belief, Defendant Sherman Hamilton is a citizen and resident of Atoka County, Oklahoma. Defendant Hamilton was at all relevant times the Road Supervisor for ODOT and in his position has been, at all times relevant hereto, responsible for ensuring non-discriminatory work policies with respect to his employees at ODOT pursuant to federal and state law. In addition, Defendant Hamilton is, and was at all relevant times hereto, responsible for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs of ODOT, including the policies, practices, procedures, and/or customs that violated Plaintiff's rights set forth in the Complaint.

6. Upon information and belief, Defendant Ashley Hawkins is a citizen and resident of Atoka County, Oklahoma. Defendant Hawkins was at all relevant times the Deputy Division Engineer for ODOT and in her position has been, at all times relevant hereto, responsible for ensuring non-discriminatory work policies with respect to his employees at ODOT pursuant to federal and state law. In addition, Defendant Hawkins is, and was at all relevant times hereto, responsible for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs of ODOT, including the policies, practices, procedures, and/or customs that violated Plaintiff's rights set forth in the Complaint.

7. Upon information and belief, Defendant Anthony Echellie is a citizen and resident of Atoka County, Oklahoma. Defendant Hawkins was at all relevant times the Division Engineer for ODOT and in his position has been, at all times relevant hereto, responsible for ensuring non-discriminatory work policies with respect to his employees at ODOT pursuant to federal and state law. In addition, Defendant Echellie is, and was at all relevant times hereto, responsible for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs of ODOT, including the policies, practices, procedures, and/or customs that violated Plaintiff's rights set forth in the Complaint.

8. Upon information and belief, Defendant The wrongful acts complained of herein occurred in Atoka County, Oklahoma.

9. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343 to secure protection of and to redress deprivations of rights secured by the Fourteenth Amendment to the United States Constitution as enforced by 42 U.S.C. § 1983, which provides for the protection of all persons in their civil rights and the redress of deprivation of rights under color of law.

10.     Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTS COMMON TO ALL CLAIMS

11.     Plaintiff incorporates as if realleged Paragraphs 1-8.

12.     Plaintiff began working at the Oklahoma Department of Transportation on June 4, 2019. He was the only black employee in his department and all of ODOT's Atoka County Offices.

13.     Plaintiff was immediately treated differently due to his race.

14.     During Plaintiff's first day on the job, the employees were instructed by Defendant Jackson to shovel curbs within the Atoka city limits. After speaking with co-workers, Plaintiff was told, "the only reason he had us doing it was to see if I [plaintiff] would work." The implication was that Plaintiff was a lazy black man.

15.     After lunch on Plaintiff's first day on the job, he was instructed by his coworker, Artie Cole, to drive the backhoe. Plaintiff was still completing his training and was not aware of the rules and policies on driving the backhoe, of which Defendant Cole was aware. Plaintiff had a near miss with traffic and was removed from the backhoe by another coworker, Sherman Hamilton. Defendant Hamilton then got upset with Plaintiff and told him he had no business operating the backhoe since he had not completed his training. Plaintiff told Defendant Hamilton that Defendant Cole instructed him to drive the backhoe, to which Defendant Hamilton laughed and responded, "you gotta watch him." Plaintiff was essentially set up by his coworkers for their entertainment.

16.     A few days later as Plaintiff was fueling up tools, Defendant Jackson came to talk to him. Defendant Jackson mentioned that he had been asked, "what is it like working with the black guy?" Plaintiff was visibly uncomfortable and did not know how to respond.

17. Plaintiff spent the next several months dealing with racist discrimination, including being purposefully misdirected about how to complete tasks, being harassed and set up to fail by his co-workers, including Defendants Cole and Hamilton, and being assigned to the most undesirable tasks by Defendants Jackson, Hamilton, and Cole.

18. For example, Plaintiff once asked if he could wear shorts to a job on July 3rd, and his coworkers assured him that was fine and made it seem like they all wore shorts from time to time. When Plaintiff showed up in shorts that day, he was reprimanded. It was clear to Plaintiff that he had been set up by his coworkers to be reprimanded for wearing the wrong clothing to work.

19. Plaintiff's coworkers continually treated him differently because he was the only black person on the crew. He was constantly singled out, harassed, intimidated, and made fun of for his race.

20. Plaintiff eventually called Defendant Cindy Akard in Human Resources, told her everything he had experienced, and asked to be removed from Atoka County. Defendant Akard told Plaintiff, "I'll see what I can do, but if what you're saying is true, it's the people not the job because you're not the first person to complain about this."

21. Plaintiff reached out to Defendant Akard several times over the course of a few months and was never offered a transfer. After reaching out to Defendant Akard, the harassment and discrimination increased in frequency and severity.

22. Plaintiff was then assigned to mow right of ways and noticed that his coworker Artie Cole would make it a point to leave him the most dangerous sections to mow.

23. Plaintiff eventually spoke with Defendants Fodge, Hawkins, and Echellie over what was taking place in Defendant Jackson's unit. Plaintiff re-iterated his desire to be transferred to each Defendant Fodge, Hawkins, and Echellie. Defendants Fodge, Hawkins, and Echellie did nothing

to address the conduct by Defendants Jackson, Cole, and Hamilton. They failed to intervene and took no action to provide Plaintiff with the requested transfer.

24. Plaintiff called Defendant Akard again and asked to talk to her. When Plaintiff told Defendant Jackson that he needed to talk to Defendant Akard, Defendant Jackson tried to intimidate the Plaintiff into not reaching out to Defendant Akard. Defendant Jackson stated, "I just find it funny how one of my guys talks to personnel so much." It was clear to Plaintiff that Defendant Jackson had been made aware of Plaintiff's complaints to human resources and Defendant Jackson disliked the fact that Plaintiff was attempting to resolve these problems through HR.

25. Defendant Akard told the Plaintiff that she did not know what to do about a transfer since Plaintiff was still on probation as a new employee. Defendant Akard then told the Plaintiff not to make a big deal out of the situation and to just talk to Defendant Jackson about it.

26. Plaintiff attempted to follow Defendant Akard's instructions and again attempted to talk to Defendant Jackson about the situation. Plaintiff requested a transfer, to which Defendant Jackson replied that he would not sign off on it. During this talk, Plaintiff expressed to Defendant Jackson that he did not like being mistreated based on his race. Plaintiff also explained that he did not like working with Defendant Cole because he felt like Defendant Cole was constantly trying to set him up. After speaking with Defendant Jackson, Plaintiff was scheduled to work with Defendant Cole for weeks in retaliation for making the complaint. Plaintiff felt that this was an attempt to punish him or make him miserable for voicing his concern.

27. Plaintiff continued to report his concerns over harassment with individuals who supervised Defendant Jackson, including Defendants Fodge and Echellie, as well as and Defendant Akard to no avail.

28. Throughout his employment with ODOT, Plaintiff constantly overheard employees using racial slurs about Native Americans, African Americans, and Hispanics. Defendant Hamilton told Plaintiff that the east side of Atoka is called "nigger town" and Plaintiff "should ride through and turn [his] music up."

29. Another time, while working on Highway 43 East, Defendant Hamilton yelled, "woah nigger!" and then turned to Plaintiff and said, "If you ever put a case on me, I'll figure out a way to get you back."

30. Defendant Cole once said to Plaintiff, "if I wanted to look like you, all I have to do is paint my face black." These things would occur on a regular basis, and Plaintiff felt he could not speak out because Defendant Jackson made it clear that he was not going to listen to Plaintiff's complaints, Defendant Akard told him not to make a big deal out of it, and Defendants Fodge, Hawkins, and Echellie knew about the situation and took no action to address it.

31. Defendant Jackson was also a constant source of discriminatory behavior to the Plaintiff. Defendant Jackson was responsible for several uncomfortable, racist incidents. Any time the Plaintiff tried to speak with Defendant Jackson, he would bring up Plaintiff's race. Defendant Jackson would often try to joke with the Plaintiff and say, "you're okay -- for a white guy." Additionally, Defendant Jackson would attempt to intimidate the Plaintiff by sharpening a knife every time the Plaintiff spoke with him. Plaintiff felt threatened by this, particularly when Plaintiff was trying to address his concerns over racism with Defendant Jackson.

32. Leading up to Plaintiff's constructive discharge, he was on COVID-related leave. Defendant Jackson made it clear that he didn't believe COVID leave was something employees should be allowed to take, particularly not the Plaintiff as a "lazy" black employee.

33. On two different occasions in June of 2020, Plaintiff observed Defendant Jackson either outside of his house or following him about town. Defendant Jackson appeared to be surveilling the Plaintiff. Because Defendant Jackson had made so many overtly racism comments and had threatened Plaintiff in the workplace by sharpening a knife during their discussions, Plaintiff feared for his life and the lives of his children. Plaintiff's fear was so deeply rooted that he made the decision to move away from Atoka to protect his family and children.

34. Because of these incidents and the constant discrimination Plaintiff faced, he no longer felt safe working at ODOT. Plaintiff had no choice but to resign. On June 22, 2020, Plaintiff was constructively discharged.

## FIRST CLAIM FOR RELIEF
## 42 U.S.C. § 1981 & 42 U.S.C. § 1983
**(As to all Defendants)**

35. Plaintiff incorporates the preceding paragraphs as if realleged.

36. Defendants treated Plaintiff differently than his similarly-situated Caucasian coworkers, who received favorable treatment and were not subjected to unfavorable job assignments.

37. By treating Plaintiff differently than similarly-situated Caucasian employees with regard to job assignments, Defendant and its agents have violated 42 U.S.C §1981, for which Plaintiff seeks redress under 42 U.S.C. § 1983 (which Plaintiff acknowledges, provides the sole remedy for violation of § 1981).

WHEREFORE, Plaintiff prays for judgment against Defendants for:

a. Back pay and lost benefits; front pay until normal retirement;

b. Compensatory damages for his mental anguish, pain and suffering and other non-pecuniary losses;

c. His attorney fees and the costs and expenses of this action;

d. Such other relief as the Court deems just and equitable.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF 42 U.S.C § 1983 ACTING UNDER COLOR OF LAW
### Fourteenth Amendment
### (As to all Defendants)

38. Plaintiff incorporates the preceding paragraphs as if realleged.

39. There is an affirmative link between the aforementioned acts and/or omissions of Defendant in discriminating against Plaintiff by maintaining a work environment that favors Caucasian employees over African American employees, and the policies, practices and/or customs, which Defendant Jackson promulgated, created, implemented and/or possessed responsibility for.

40. Such policies, practices and/or customs include, but are not limited to: the failure to ensure African American employees were not treated in a discriminatory manner, the failure to address, investigate, and rectify instances in which the Defendants were made aware of discriminatory treatment; the failure to abide by any grievance process whatsoever when employees allege race discrimination; and a reliance upon arbitrary and/or subjective criteria in job assignments.

41. Defendant Jackson knew and/or it was obvious that the failure to enforce the aforementioned polices, practices and/or customs posed an excessive risk of discrimination against employees like Plaintiff.

42. Defendant Jackson, through his continued encouragement, ratification, and approval of the aforementioned policies, practices, and/or customs, in spite of their known and/or obvious tendencies to promote discrimination, has discriminated against Plaintiff based on his race by treating him differently than non-African American counterparts.

43. Plaintiff contends that Defendant Jackson was aware of widespread complaints of African Americans being treated disparately on the basis of race, like those of Plaintiff.

44. Plaintiff contends that at all times relevant to this complaint, Defendant Jackson acted under color and pretense of law, to wit: under color of statutes, ordinances of Atoka County, custom and usages of the State of Oklahoma to deprive Plaintiff of the rights, privileges and immunities guaranteed to him in the Constitution of the United States and the laws of the United States and the State of Oklahoma.

45. The policies and practices of racial discrimination and harassment adopted, ratified, perpetuated or otherwise sanctioned by Defendant Jackson, have violated Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.

WHEREFORE, Plaintiff prays for judgment against Defendants for:

a. Back pay and lost benefits; front pay until normal retirement

b. Compensatory damages for his mental anguish, pain and suffering and other non-pecuniary losses;

c. His attorney fees and the costs and expenses of this action;

d. Such other relief as the Court deems just and equitable.

### THIRD CLAIM FOR RELIEF
### RETALIATION IN VIOLATION OF §1981
### (As to Defendants Jackson, Hamilton, Fodge, Hawkins, and Echellie)

46. The Plaintiff incorporates the preceding paragraphs as if realleged.

47. The Plaintiff engaged in protected opposition to discrimination when he discussed his discriminatory treatment with Defendant Akard at Human Resources and Defendant Jackson.

48. After the Plaintiff engaged in protected opposition to discrimination, the Defendant took adverse employment action against Plaintiff by increasing the harassment and discrimination in

frequency and severity, to the point that Plaintiff was constructively discharged.

49. By taking adverse actions against the Plaintiff for his participation in protected activity, Defendant has violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et. seq.

WHEREFORE, Plaintiff prays for judgment against Defendant for:

a. Back pay and lost benefits; front pay until normal retirement

b. Compensatory damages for his mental anguish, pain and suffering and other non-pecuniary losses;

c. His attorney fees and the costs and expenses of this action;

d. Such other relief as the Court deems just and equitable.

## FOURTH CLAIM FOR RELIEF
## HOSTILE WORK ENVIRONMENT IN VIOLATION OF 42 U.S.C. §1981
### (As to all Defendants)

50. Plaintiff incorporates as if re-alleged the preceding paragraphs

51. By engaging in racially discriminatory conduct on a daily basis, making threatening gestures, following and surveilling Plaintiff, and failing to take any steps to address Plaintiff's complaints of race discrimination, Defendants have created a racially hostile work environment.

52. The ongoing, chronic, pervasive, and severe racially discriminatory environment created by Defendants violates §1981.

WHEREFORE, Plaintiff prays for judgment against Defendant for:

a. Back pay and lost benefits; front pay until normal retirement

b. Compensatory damages for his mental anguish, pain and suffering and other non-pecuniary losses;

c. His attorney fees and the costs and expenses of this action;

d. Such other relief as the Court deems just and equitable.

WHEREFORE, based on the foregoing, Plaintiff prays that this Court grant the relief sought, including, but not limited to, actual damages in excess of Seventy-Five Thousand Dollars ($75,000.00), with interest accruing from the time of filing suit, punitive damages in excess of Seventy-Five Thousand Dollars ($75,000.00), the costs of bringing this action, a reasonable attorney's fee, along with such other relief as deemed just and equitable.

Respectfully submitted,

**SMOLEN & ROYTMAN**

Daniel E. Smolen, OBA #19943
Leslie K. Briggs, OBA #33845
701 S. Cincinnati Avenue
Tulsa, Oklahoma 74119
(918) 585-2667 P
(918) 585-2669 F
danielsmolen@ssrok.com
lesliebriggs@ssrok.com
***Attorneys for Plaintiff***