# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JOSHUA DAWSON,** | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-21-359-RAW |
| **DEAN JACKSON, CINDY AKARD, ARTIE COLE, SHERMAN HAMILTON JULIE FODGE, ASHLEY HAWKINS and ANTHONY ECHELLE,** | ) |
| Defendants. | ) |

## **ORDER**

Before the court is the amended motion of defendants Jackson, Cole, and Hamilton to dismiss. In the amended complaint (#27), plaintiff alleges he began working at the Oklahoma Department of Transportation ("ODOT") on June 4, 2019 and he was constructively discharged on June 22, 2020. He alleges he was subjected to pervasive racial discrimination by his supervisors and coworkers.[1] He alleges that his complaints to his employer's Human Resources office were wholly ignored. He alleges he was forced to resign and move his family to a new town to protect himself and his family from pervasive

---

[1] He alleges he was the only black employee in his department and all of ODOT's Atoka County offices.

racial discrimination, threats of violence, and stalking. Specifically, he brings claims for racial discrimination, hostile work environment, and retaliation.

Under Rule 12(b)(6), the court must assume the truth of plaintiff's well-pleaded facts and draw all reasonable inferences from them in the light most favorable to plaintiff. *Western Watershed Project v. Michael,* 869 F.3d 1189, 1193 (10th Cir.2017). To overcome a motion to dismiss, a complaint must plead facts sufficient to state a claim to relief that is plausible on its face. *Sylvia v. Wisler,* 875 F.3d 1307, 1313 (10th Cir.2017). A claim is facially plausible if the plaintiff has pled factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The degree of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2) F.R.Cv.P. depends on the type of case. *Robbins v. Oklahoma,* 519 F.3d 1242, 1248 (10th Cir.2008). In a case against multiple defendants, "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations. . . ." *Id.* at 1250 (emphasis in original).

Rule 8(a)(2) F.R.Cv.P. still lives. Under Rule 8, specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests. *Khalik v. United Air Lines,* 671 F.3d 1188, 1191 (10th Cir.2012). While the Rule 12(b)(6) standard does not require that plaintiff establish a prima facie case in his

complaint, the elements of each cause of action help to determine whether plaintiff has set forth a plausible claim. *Id.* at 1192.

Plaintiff's first claim for relief, asserted against all defendants, is for violation of 42 U.S.C. §1981, with plaintiff seeking redress pursuant to 42 U.S.C. §1983.[2] The elements of a §1981 discrimination claim are (1) that the plaintiff is a member of a protected class; that the defendant had the intent to discriminate on the basis of race; and (3) that the discrimination interfered with a protected activity as defined in §1981.[3] *Handy v. Maximus Inc.,* 2022 WL 405460, *2 (10th Cir.2022). The elements of a prima facie case have been stated as follows: (1) the victim belongs to a class protected by §1981, (2) the victim suffered an adverse employment action, and (3) the challenged action took place under circumstances giving rise to an inference of discrimination. *Throupe v. Univ. of Denver,* 988 F.3d 1243, 1252 (10th Cir.2021).

---

[2] Section 1983 provides "the exclusive federal . . . remedy for the violation of the rights guaranteed by §1981 when the claim is pressed against a state actor." *Jett v. Dall. Indep. Sch. Dist.,* 491 U.S. 701, 735 (1989). It appears the Tenth Circuit has not addressed the application of *Jett* to state actor defendants sued in their individual capacities, as opposed to entity state actors. *See, e.g., McCormick v. Miami Univ.,* 693 F.3d 654, 660 (6th Cir.2012)("[W]e have not addressed whether *Jett* bars a §1981 claim against an individual state actor sued in his or her individual capacity. We now hold that it does").

[3] "Section 1981 establishes four protected interests: (1) the right to make and enforce contracts; (2) the right to sue, be parties, and give evidence; (3) the right to the full and equal benefit of the laws; and (4) the right to be subjected to like pains and punishments." *Phelps v. Wichita Eagle-Beacon,* 886 F.2d 1262, 1267 (10th Cir.1989).

In this case, the defendants have also asserted the defense of qualified immunity. "Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity." *Myers v. Baxter,* 773 Fed.Appx. 1032, 1036 (10th Cir.2019). At the motion to dismiss stage, however, defendants are subject "to a more challenging standard of review than would apply" at the summary judgment stage. *Id.*

"At the motion to dismiss stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness." *Id.* (emphasis in original). When a defendant asserts qualified immunity in a motion to dismiss, the plaintiff must allege facts (1) that the defendant violated a constitutional right and (2) that the constitutional right was clearly established. *Thompson v. Lengerich,* 2023 WL 2028961, *2 (10th Cir.2023). Courts have discretion to decide which qualified immunity prong to consider first. *Id.*

Plaintiff's first claim is for racial discrimination and harassment, ultimately resulting in plaintiff's constructive discharge. Defendant Jackson is alleged to have been ODOT Superintendent at all relevant times. (#27 at ¶2). During plaintiff's first day, Jackson instructed employees to "shovel curbs." Plaintiff was told (by co-workers, not Jackson) that the reason for the directive was to see if plaintiff would work. (¶14).

Jackson told plaintiff that Jackson had been asked what it was like "working with the black guy." (¶16). Jackson assigned plaintiff to the most undesirable tasks. (¶17) Jackson told plaintiff that Jackson had something plaintiff would like. Upon walking outside, plaintiff

learned it was a watermelon. (¶23). Jackson "made it clear" he would not listen to plaintiff's complaints. (¶27). Jackson was a "constant source of discriminatory behavior" and was "responsible for several uncomfortable, racist incidents." Whenever plaintiff tried to speak with Jackson, the latter would bring up plaintiff's race. Jackson often joked to plaintiff "you're okay – for a white guy." (¶28).

Once when plaintiff brought his complaints of racism to Jackson, the latter sharpened a knife, pointed it at plaintiff, telling plaintiff "you need to toughen up, my son-in-law is Oklahoma Highway Patrol, if I want to find anything out about you let's just say I have my ways." Plaintiff felt threatened and intimidated. (¶29). When plaintiff was seeking to speak to defendant Akard (ODOT Human Resources Manager), Jackson stated "I just find it funny how one of my guys talks to personnel so much." (¶34). Plaintiff requested a transfer, but Jackson replied he would not sign off on it. After expressly complaining about co-worker Cole, plaintiff alleges Jackson scheduled plaintiff to work with Cole for weeks. Plaintiff interpreted this as retaliation for his complaint. (¶36).

Paragraph 38 is somewhat unclear. Evidently, at the time of his alleged constructive discharge, plaintiff was on COVID-related leave. Jackson "made it clear" he did not believe employees should be allowed to take COVID leave, "particularly not the Plaintiff as a 'lazy' black employee." This passage does not explicitly allege that Jackson himself made the latter statement, but under the standard applicable to a motion of this type, the court makes that interpretation.

Defendant Cole was plaintiff's co-worker and trainer (¶4). On plaintiff's first day on the job, Cole instructed plaintiff to drive the backhoe, a job for which plaintiff had not completed his training. Plaintiff had a near miss with traffic and was verbally reprimanded. Upon plaintiff telling defendant Hamilton that Cole had instructed plaintiff to do so, Hamilton laughed and said "you gotta watch him."

Plaintiff's co-workers (including Cole and Hamilton) racially discriminated against plaintiff, made racist comments, purposefully misdirected plaintiff how to complete tasks, harassed plaintiff, set plaintiff up to fail, and assigned plaintiff to the most undesirable tasks. (¶17). Cole once told plaintiff "if I wanted to look like you, all I have to do is paint my face black," (¶22). On mowing assignments, Cole left plaintiff the most dangerous sections to mow. (¶32). Cole, Jackson, and Hamilton treated plaintiff differently than his similarly-situated Caucasian co-workers by harassing plaintiff because of his race, including constant racial comments to plaintiff, threats of violence, intentionally placing plaintiff in harm's way, and attempting poisoning.[4] (¶42).

Defendant Hamilton was the ODOT Road Supervisor (¶5). He told plaintiff that the east side of Atoka, Oklahoma was called "nigger town" and plaintiff "should ride through and turn [his] music up." (¶20). While working, Hamilton once yelled "woah nigger!" and then turned to plaintif and said "If you ever put a case on me, I'll figure out a way to get you back." (¶21). Paragraphs 24-26 of the Amended Complaint refer to alleged conduct of

---

[4] *See §24.*

"Defendant Sherman." The court assumes this refers to Sherman Hamilton. Plaintiff once set a cup of coffee on the back of a flatbed truck and left to retrieve his lunch box. When plaintiff returned, someone had put poison weed killer in a similar cup and placed it next to plaintiff's coffee cup. Plaintiff poured the contents of both cups on the ground. Hamilton laughed and said "you're a smart man. I wondered how long it would take you to catch it." (¶24).

On multiple occasions, Hamilton did not allow plaintiff to drive an ODOT vehicle to the closest gas station to use the restroom like all other employees. Plaintiff was forced to relieve himself outside, on the side of the road, and in public view. (¶25). While taking a break, Hamilton referred to a woman as "no good now. I seen her walking in nigger town the other day." (¶26). Paragraph 42 has already been quoted. It alleges conduct on the part of Cole, Jackson, and Hamilton. Hamilton (and several other named defendants) discriminated against plaintiff based on his race through the encouragement, ratification and approval of discriminatory acts and the violations of policies, practices, and/or customs. (¶49). Plaintiff engaged in protected opposition to discrimination when he complained of his treatment to Hamilton and others. (¶52). This resulted in all defendants increasing the harassment, resulting in plaintiff's constructive discharge. (¶53).

Even viewing the allegations in the light most favorable to plaintiff, the court concludes he has not made out a plausible claim under §1981. Ultimately, among a sequence of inappropriate comments and actions by co-workers, plaintiff has not plausibly alleged an

"adverse employment action." Plaintiff apparently views this element as satisfied by his allegation of constructive discharge. The court disagrees. "[A] plaintiff cannot successfully allege constructive discharge where the resignation was voluntary." *Rowley v. Human Services Dept.,* 2021 WL 4948217, *17 (D.N.M.2021)(citing cases). The conditions of employment must be objectively intolerable, such that the plaintiff had no other choice but to quit. *Nazinitsky v. Integris Baptist Med. Center, Inc.,* 2020 WL 1957914, *9 (W.D.Okla.2020)(citing cases). Plaintiff's allegations, accepted as true, do not rise to this level. The present motion is therefore granted as to plaintiff's first claim.

Plaintiff's second claim is that (of present movants) defendants Jackson and Hamilton violated the Equal Protection Clause of the Fourteenth Amendment, for which plaintiff seeks redress under §1983. This claim will also be dismissed. A "class of one" equal protection claim is not legally cognizable in the public employment context. *Sherman-Harris-Golson v. Foreat Park Mun. Auth.,* 2021 WL 5056582, *6 (W.D.Okla.2021)(citing *Engquist v. Oregon Dept. of Ag.,* 553 U.S. 591, 609 (2008)). Thus, plaintiff must sufficiently allege a traditional class-based equal protection claim to state a claim for relief. *Id.* That is, plaintiff must allege facts to show that an otherwise similarly situated person was treated differently than he was. *Id.* The court finds plaintiff has not done so.

To be sure, plaintiff alleges that Defendants . . . through their continued encouragement, ratification, and approval of discriminatory acts and the violations of policies, practices, and/or customs, have discriminated against Plaintiff based on his race by

treating him differently than non-African American counterparts." (#27 at ¶49). *See also* ¶42. Although a complaint need not contain detailed factual allegations, it requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). The allegations in plaintiff's second claim are "collective," and (even combined with the "facts common to all claims" previously recited) do not state a cause of action against individual defendants.

For his third claim, (again naming Jackson and Hamilton of the present movants) plaintiff seeks relief pursuant to §1981 (again via §1983) for alleged retaliation. Plaintiff meets his initial burden of establishing a prima facie case of retaliation by showing that (1) he engaged in protected opposition to discrimination; (2) he suffered an adverse action that a reasonable employee would have found material; and (3) there is a causal nexus between his protected activity and the employer's adverse action. *Tracy v. Vail Resorts, Inc.,* 2022 WL 16557393, *3 (10th Cir.2022).

At the pleading stage, the plaintiff is not required to establish a full-blown prima facie case of retaliation – he is only required to allege facts sufficient to set forth a plausible claim. Thus, to survive the motion to dismiss, plaintiff's complaint need only allege facts linking the employer's employment decisions to a retaliatory motive, and giving rise to a reasonable inference of retaliation. *Id.* In this court's view, plaintiff has not done so.

The amended complaint alleges that "[a]fter the Plaintiff engaged in protected opposition to discrimination, *the Defendants* took adverse employment action against

9

Plaintiff by increasing the harassment and discrimination in frequency and severity, to the point that Plaintiff was constructively discharged. (¶53)(emphasis added). Again, collective allegations, as opposed to specific allegations against a specific defendant, are insufficient.

In order to show a causal connection, plaintiff has to show that at the time the actor took the challenged adverse action against him the actor knew about plaintiff's protected opposition to discrimination. *See Rodriguez v. Brown,* 2022 WL 3453401, *14 (10th Cir.2022). Plaintiff has made no such allegations as to Hamilton. Arguably, a sufficient allegation has been made as to Jackson's knowledge, when he referenced plaintiff speaking to "personnel too much" (¶34).

Nevertheless, the court finds a lack of a materially adverse action alleged. As previously stated, the court finds plaintiff allegations do not establish a cause of action for constructive discharge. Jackson's knife-sharpening (¶29) might qualify, but the allegations do not reflect that this single incident actually deterred plaintiff from continuing to report alleged discrimination. The single incident also does not manifest multiple "threats of violence." Again, a constructive discharge has not been adequately alleged.

Plaintiff's fourth claim (against all defendants) is for hostile work environment. A plaintiff claiming a racially hostile work environment must show that under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was racial or stemmed from racial animus. *Durand v. Shull,* 2022 WL 1184041, *3 (10th Cir.2022). The Tenth Circuit

has assumed, without deciding, that such a claim can be brought as a §1983 claim based on both §1981 and the Equal Protection Clause. *Id.* at *2 (citing *Allstate Sweeping, LLC v. Black,* 706 F.3d 1261, 1266 (10th Cir.2013)).

Once again, plaintiff makes the collective allegation that "*Defendants* have created a racially hostile work environment." (¶56)(emphasis added). The court finds a plausible claim has not been stated. The law does not establish "a general civility code" for the workplace. *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 81 (1998). A hostile work environment requires allegations involving harassment based on a prohibited factor that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *See Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67 (1986). Severity and pervasiveness are evaluated according to the totality of the circumstances, considering such factors as the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. *See Chavez v. New Mexico,* 397 F.3d 826, 832 (10th Cir.2005). The fourth claim is also dismissed.

The court's ruling on the merits could constitute effectively granting the motion as to qualified immunity as well. By finding no violation of §1981 or §1983, the court has concluded that plaintiff cannot prove the first prong of qualified immunity. *See Bird v. Regents of New Mex. St. Univ.,* 619 Fed.Appx. 733, 760 (10th Cir.2015). As explained above, however, different pleading standards apply. Even if the plaintiff's allegations are sufficient

11

to defeat qualified immunity at the pleading stage, the court is persuaded that dismissal under the Rule 12(b)(6) standard is appropriate. In addition, plaintiff has not demonstrated that the law was clearly established that movants' conduct was violative of a constitutional or statutory right.

At the conclusion of plaintiff's response he requests leave to amend (#37 at 9). Movants stated no objection in the motion itself. (#36 at 2). The court, however, does not grant the request at this time. First, "bare requests for leave to amend do not rise to the status of a motion and do not put the issue before the district court." *Brooks v. Mentor Worldwide LLC,* 985 F.3d 1272, 1283 (10th Cir.2021). Second, Local Civil Rule 7.1(k) requires that a copy of the signed, proposed amended pleading be attached to the motion. Third, the court is persuaded at this time that any amendment would be futile, as the complaint fails as a matter of law, even apart from its collective allegations which do not reference specific defendants. Plaintiff has already amended his complaint once. The purpose of motion practice under Rule 12(b)(6) is not for the court to "identify" pleading deficiencies as to each defendant, with such deficiencies to be "corrected" by serial amendments. *Shed v. Okla. Dept. of Human Servs.,* 729 Fed.Appx. 653, 658 (10th Cir.2018). Nevertheless, the court does not preclude plaintiff, if he so chooses, from filing a formal motion to file a second amended complaint.

It is the order of the court that the amended motion to dismiss (#36) is hereby granted. Defendants Dean Jackson, Artie Cole, and Sherman Hamilton are dismissed as party

defendants.  The original motion (#29) by these defendants is deemed moot.

Any motion for leave to amend shall comply with Local Civil Rule 7.1(k) and shall be filed within 10 days of the date of this order.  If plaintiff fails to move to amend within the time prescribed, judgment will be entered in movants' favor.

**IT IS SO ORDERED** this 13th  day of MARCH, 2023.

_____
**RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**